IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. HAMMERS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MATTHEW R. HAMMERS, APPELLANT.

Filed August 4, 2020.    Nos. A-19-1221 through A-19-1223.

Appeals from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Shawn Elliott for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

In these consolidated appeals, Matthew R. Hammers appeals from his plea-based convictions of attempted possession of a controlled substance (case No. A-19-1221), attempted delivery or with intent to deliver a controlled substance (case No. A-19-1222), and operating a motor vehicle to avoid arrest and driving during revocation, first offense (case No. A-19-1223). Hammers alleges that the district court imposed excessive sentences in all three cases. He also claims that in cases Nos. A-19-1222 and A-19-1223 the district court erred in failing to reinstate forfeited bonds. We affirm.

## BACKGROUND

In case No. A-19-1221, in March 2019, police officers were dispatched to an accident, and upon arrival Hammers was found in the driver's seat of a vehicle. A search of the vehicle revealed

a loaded syringe with unknown pink liquid, later confirmed to be methamphetamine, inside the center console. Hammers was charged with possession of a controlled substance, a Class IV felony.

In case No. A-19-1222, in November 2018, police officers conducted a traffic stop of a vehicle in which Hammers was a passenger. During a search of the vehicle, a tied-off baggy containing a white crystalline substance, later determined to be 1.72 grams of methamphetamine, was found on the front passenger seat where Hammers had been seated. Also found was a digital scale and two black, unused baggies. Hammers claimed ownership of the tied-off baggy of methamphetamine and the digital scale. Upon finding in the driver's purse some drug paraphernalia associated with methamphetamine use, officers believed that Hammers had likely sold the driver a small amount of methamphetamine. Hammers was charged with delivery or with intent to deliver a controlled substance, a Class II felony.

In case No. A-19-1223, in October 2018, police officers were dispatched to look for a vehicle with stolen license plates. Upon locating the vehicle, officers ordered the driver, Hammers, to shut the engine off. Hammers did not comply, instead accelerating to an estimated 50 miles per hour in a 25-mile-per-hour residential zone. The vehicle, later found abandoned, bore Hammers' fingerprints, and police found a letter addressed to Hammers in the vehicle. Because Hammers' license had been revoked, he was charged with driving during revocation, first offense, a Class IV felony, and operating a motor vehicle to avoid arrest, a Class IV felony.

Following his arraignments in cases Nos. A-19-1222 and A-19-1223, a status hearing was set for May 21, 2019. Hammers failed to appear at that hearing and, on June 5, his bonds were forfeited in those two cases and a bench warrant was issued. Bench warrants were issued for Hammers' arrest on May 22. Hammers was arrested on the warrants by a deputy of the Lancaster County sheriff's office on June 4 and he was lodged into jail. Hammers, still in custody, next appeared at a hearing on June 10. At that time, he made an oral motion for the reinstatement of the two bonds. Hammers explained that the bonds had been posted by his mother, and he wished that the funds be returned to her. The State objected to the reinstatement request, noting that there had been no request in the file. The district court denied the request on the record at the hearing without further comment and an entry in the judge's notes was made to that effect, but no entry of judgment appears in the record.

At a plea hearing on October 22, 2019, Hammers agreed to plead guilty to amended informations charging him with attempted possession of a controlled substance (case No. A-19-1221), attempted delivery or with intent to deliver a controlled substance (case No. A-19-1222), and operating a motor vehicle to avoid arrest and driving during revocation, first offense (case No. A-19-1223). The State agreed to dismiss charges in three other cases filed against Hammers. The court accepted the factual basis offered by the State in each of the cases and found that Hammers entered guilty pleas to the charges freely, knowingly, voluntarily, and without any threats or promises. The court accepted Hammers' pleas in all three cases and convicted him of the offenses in the amended informations.

On December 3, 2019, the district court sentenced Hammers in case No. A-19-1221, attempted possession of a controlled substance, a Class I misdemeanor, to 1 to 1 year's imprisonment, with no credit for time served. In case No. A-19-1222, attempted delivery or with intent to deliver a controlled substance, a Class IIA felony, Hammers was sentenced to 8 to 10

years' imprisonment, and given credit for 220 days served. In case No. A-19-1223, operating a motor vehicle to avoid arrest, a Class I misdemeanor, Hammers was sentenced to 1 to 1 year's imprisonment, and on the driving during revocation charge, a Class IV felony, Hammers was sentenced to 2 to 2 years' imprisonment, and his license was revoked for a period of 15 years from the date of his release from imprisonment. Hammers was not given credit for time served in either of the sentences in case No. A-19-1223. All of the sentences were ordered to run consecutively. At the sentencing hearing, counsel for Hammers noted that Hammers' mother, Alison Duff, had posted the bond previously forfeited. Counsel stated: "She's asking that the Court reinstate the bonds, and unless the fees and the court costs -- permit her to have that bond money back." Counsel did note for the court that his investigation revealed that the forfeited bonds had been sent to the state treasurer on October 1, 2019. The district court again denied the request without further comment. Hammers timely appealed to this court.

ASSIGNMENTS OF ERROR

Hammers assigns that the district court erred in (1) imposing excessive sentences in all three cases and (2) failing to reinstate forfeited bonds in cases Nos. A-19-1222 and A-19-1223.

STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Archie*, 305 Neb. 835, 943 N.W.2d 252 (2020).

The proceeding to set aside a bond forfeiture is in its nature equitable, within the meaning of the statute, and accordingly, appellate review of the lower court's ruling on a request to set aside a forfeiture is de novo. *State v. Seaton*, 170 Neb. 687, 103 N.W.2d 833 (1960); *State v. Hernandez*, 1 Neb. App. 830, 511 N.W.2d 535 (1993). The decision whether to set aside a forfeiture rests within the discretion of the district court and will be reversed only if the court acted arbitrarily or capriciously. *State v. Konvalin*, 165 Neb. 499, 86 N.W.2d 361 (1957); *State v. Hernandez, supra.*

ANALYSIS

*Excessive Sentence.*

Hammers argues that the district court abused its discretion in sentencing him to terms of imprisonment. He claims that because he is in need of long-term substance abuse treatment the district court should have imposed a lesser sentence. Hammers argues that he obtained a substance evaluation while the cases were pending and could have gone into treatment if the court would have permitted him to do so. Hammers notes the crimes did not involve violence and asserts that his criminal history was due to his untreated addiction issues.

Because the sentences imposed on Hammers fall within the statutory sentencing limits, we review the sentence for an abuse of discretion. *State v. Archie, supra*. An abuse of discretion in imposing a sentence occurs when a sentencing court's reasons or rulings are clearly untenable and unfairly deprive the litigant of a substantial right and just result. *State v. Artis*, 296 Neb. 172, 893 N.W.2d 421 (2017).

When imposing a sentence, a sentencing judge should customarily consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past

criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Archie, supra*. However, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Hammers was convicted of attempted possession of a controlled substance, a Class I misdemeanor; delivery or with intent to deliver a controlled substance, a Class IIA felony; operating a motor vehicle to avoid arrest, a Class I misdemeanor; and driving during revocation, a Class IV felony. A Class I misdemeanor is punishable by up to 1 year's imprisonment, up to a $1,000 fine, or both. Neb. Rev. Stat. § 28-106 (Reissue 2016). A Class IIA felony is punishable by between 0 and 20 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2018). A Class IV felony is punishable by 0 to 2 years' imprisonment, 0 to 12 months' postrelease supervision if imprisonment is imposed, a $10,000 fine, or both. *Id.*

The presentence investigation report (PSR) shows that Hammers had an extensive criminal history dating from 2001, including multiple convictions for assault, various property crimes and drug-related crimes, trespass, making false claims to a police officer, violation of a protection order, failure to appear, and various traffic and vehicle violations.

The PSR also shows that Hammers completed a Level of Service/Case Management Inventory (LS/CMI), which placed him at very high risk to reoffend. The PSR identified problem-solving skill deficits and stated that Hammers reported having been diagnosed with bipolar mood disorder and depression.

At the sentencing hearing, the district court stated that it had reviewed the PSR, letters it received regarding the matter, and a substance use evaluation from Lutheran Family Services. Hammers had argued that a sentence of probation was appropriate, informing the court that he has battled with drug addiction, that he is remorseful for what he has done, and that he takes responsibility for all of it.

The State informed the district court that it did not feel that Hammers was an appropriate candidate for probation with his long criminal history. It stated that Hammers is "a serial drunk driver" with felony assaults, thefts, and false reportings, and that he "constantly puts the public in danger with his behavior." The State asked for a term of incarceration.

The district court stated that saying Hammers has "a problem or that you are a menace to society is understating it," and that Hammers had been continuously involved with the system since he was 13 or 14 years old. The district court stated that Hammers has had "resource after resource, chance after chance, and it doesn't seem to have had much success in getting you to change your behavior or helping you with your addiction, which is part of your problem, but not all of your problem. You are a danger to society." The court stated that it had regard for the nature and circumstances of the crime, the history, character, and condition of Hammers, and that imprisonment was necessary for the protection of the public and the risk is substantial that during any period of incarceration Hammers would engage in additional criminal conduct. The district court concluded that a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law. Accordingly, we affirm the imposition of the district court's sentences.

*Failing to Reinstate Forfeited Bonds.*

In cases Nos. A-19-1222 and A-19-1223, Hammers contends that the district court erred in failing to reinstate his bonds that were forfeited after he failed to appear for a scheduled status hearing. At his sentencing hearing as well as the prior hearing in June, Hammers made an oral request for reinstatement of the bonds, basing his request on the fact that the bonds had been posted by his mother and his wish that the forfeited funds, totaling $2,500, be returned to her.

The statutory provisions regarding forfeiture of recognizance and the setting aside thereof are found at Neb. Rev. Stat. §§ 29-1105 through 29-1110 (Reissue 2016). Section 29-1106 provides that "[w]hen there is a breach of condition of a recognizance, the court shall declare a forfeiture of the bail." Section 29-1107 provides that "[t]he court may direct that a forfeiture of the recognizance be set aside . . . if it appears that justice does not require the enforcement of the forfeiture."

In *State v. Hernandez*, 1 Neb. App. 830, 511 N.W.2d 535 (1993), this court recognized that the purpose of bail bond is not punitive and its object is not to enrich the government or punish the defendant. We stated that the forfeiture ought to bear some reasonable relation to the cost and inconvenience to the government resulting from the breach of the conditions of the recognizance. *Id.* Factors for consideration set forth in *Hernandez* include (1) the willfulness of the defendant's breach of conditions; (2) the participation of the sureties in apprehending the defendant; (3) the cost, inconvenience, and prejudice suffered by the government as a result of the defendant's breach; and (4) any explanation or mitigating factors presented by the defendant. However, it is not necessary that each of the factors be resolved in the government's favor for the district court to enforce full forfeiture. *Id.* And in *State v. Konvalin*, 165 Neb. 499, 86 N.W.2d 361 (1957), the Nebraska Supreme Court held that it was not the obligation of the State to present evidence as to damages sustained or expenses incurred when the surety invites the court to exercise its discretion to remit the whole or part of the amount of the bond.

In the instant case, the rulings of the district court can be found in the bill of exceptions and the docket notes maintained by the court. There were no written motions requesting the reinstatement of the bond. Both the June 10 and December 3, 2019, requests were made orally in the course of hearings scheduled for those dates. As noted, the December 3 request was made by counsel for Hammers on behalf of Hammers' mother. Based on the record provided, we conclude that the district court did not abuse its discretion in denying the request for reinstatement of the bonds. Assuming without deciding that the requests were actually made by Hammers, the only claimed basis for his request are that his mother had posted the bonds on his behalf. He acknowledged that the district court accounting office had informed him that the bonds had already been sent to the state treasurer on October 1. As Hammers' motions were oral in nature, these in-court statements constitute the sole basis upon which his request is made. Our review is thus limited to consideration of the statements of counsel coupled with the documents found in the record. The transcripts from the county court do reflect that Hammers executed a bond assignment to his mother in cases Nos. A-19-1222 and A-19-1223. However, the record in the district court also shows that Hammers failed to appear for hearings scheduled on May 21. As a result, a bench warrant was issued. The Lancaster County sheriff's office subsequently located Hammers and

arrested him on the warrants on June 4. It was Hammers' failure to appear that resulted in the forfeiture of the bonds. Applying the factors set forth in *State v. Hernandez, supra*, we cannot find that the district court acted arbitrarily or capriciously. From our record, it appears Hammers willfully violated his bond conditions by failing to appear. To the extent that his mother can be considered a surety, there is no indication that she participated in apprehending him. Since the sheriff's office arrested Hammers on the bench warrants, it appears that costs and inconvenience were incurred by the government due to Hammers' breach of his bond conditions. Finally, while the loss of the bond posted may pose hardship to Hammers' mother, we cannot say that this factor outweighs the remainder of the analysis particularly whereas here, she made the decision to take the risk that Hammers would comply with the bond conditions set. Therefore, we affirm the district court's decision to deny Hammers' request to reinstate the bond.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.